```
                IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                            )
                                  )    Chapter 7
MICHAEL JAMES WILSON,             )
                                  )
     Debtors.                     )    Bankruptcy No. 03-00780
------------------------------
RENEE K. HANRAHAN, TRUSTEE,       )
                                  )    Adversary No. 04-9016
     Plaintiff,                   )
                                  )
vs.                               )
                                  )
MICHAEL JAMES WILSON,             )
ROBIN R. WILSON,                  )
                                  )
     Defendants.                  )
```

**ORDER RE COMPLAINT TO AVOID TRANSFER**

On October 20, 2004, the above-captioned matter came on for trial. Plaintiff/Trustee Renee Hanrahan appeared by Rush Shortley. Defendants Michael and Robin Wilson appeared by Don Gottschalk. Evidence was presented after which the matter was taken under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

**FINDINGS OF FACT**

Debtor Michael J. Wilson filed a voluntary Chapter 7 bankruptcy petition on March 11, 2003. On February 1, 2002, Debtor transferred commercial property to his wife, Robin R. Wilson, ("Mrs. Wilson"). In the transfer, (the "Transfer"), Debtor executed and delivered to Mrs. Wilson a Quit Claim Deed that conveyed the property to her as his wife. Under the heading, the deed reads, "For the consideration of One Dollar and other valuable consideration." The document also contains the recitation that, "This is a deed between husband and wife without actual consideration."

Trustee Renee K. Hanrahan has filed a complaint to void this transfer, alleging that the transfer was fraudulent as to

past and future creditors pursuant to Iowa Code § 684.4, which is made applicable by § 544(b)(1) of the Bankruptcy Code.

Debtor was diagnosed with cancer on September 11, 2001. He then married his longtime girlfriend, Mrs. Wilson, in November of 2001. At the time of the Transfer, Debtor's prognosis was death within a year. Debtor's health has improved since the time of the Transfer. Debtor has found effective new treatments that have prolonged his life. His present prognosis is uncertain, but death is not imminent.

Mrs. Wilson testified that, prior to marriage, she lent money to Debtor as well as worked in Debtor's business without compensation. Both Debtor and Mrs. Wilson testified that there had been an informal, but documented, oral agreement between them for several years prior to marriage. The oral agreement, (the "Agreement") was for repayment of debts either when Debtor was able to repay, when Debtor's business was sold, or when Debtor's commercial building was sold. Mrs. Wilson testified that she entered into this arrangement in good faith, expecting repayment.

After the Transfer, Debtor and Mrs. Wilson testified that Mrs. Wilson took control of the property and managed the property personally. Mrs. Wilson pays property taxes, collects rent, leases the space, and handles the maintenance issues. Debtor and Mrs. Wilson also testified that they keep all of their personal finances separate. Debtor testified that he is not involved in Mrs. Wilson's real estate dealings.

## CREDIBILITY OF WITNESSES

The only testimony offered was that of Debtor and Mrs. Wilson. In reaching a decision, the Court must consider the credibility of the witnesses and their testimony. In weighing the credibility of witnesses, the Court must examine the evidence presented and evaluate the testimony, including variations in demeanor as well as changes in tone of voice. <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 575 (1985). The Court can assess credibility based upon the content of the testimony as well as the Court's own experience with the way people act. <u>In re Carrigan</u>, 109 B.R. 167, 170 (Bankr. W.D.N.C. 1989). Where two permissible views of the evidence exist, it is the responsibility of the Court to weigh the evidence presented including the credibility of the witnesses and make a choice between them. <u>In re Waugh</u>, 95 F.3d 706, 712

2

(8th Cir. 1996); <u>In re Dullea Land Co.</u>, 269 B.R. 33, 36 (B.A.P. 8th Cir. 2001) (discussing bankruptcy court's evaluation of evidence and credibility of witnesses).

## FINDINGS RE CONTROVERTED FACTS

Applying the foregoing principles, the Court makes the following findings of fact. Debtor and Mrs. Wilson actually entered into an Agreement. Mrs. Wilson entered into the agreement in good faith, expecting repayment. The severity of Debtor's illness is not rebutted. Debtor had the expectation of death within less than a year from the Transfer. The Court finds that the intention of Debtor and Mrs. Wilson in the Transfer was to settle the antecedent debt, arising from the Agreement.

The Court finds the value of the commercial property is $29,000. Three different valuations were presented. A listing agreement in July of 2003 valued the property at $155,000. An offer to purchase on contract for $35,000 was made. The property is assessed on county tax rolls at $29,000. The Court finds the $29,000 value the most realistic. The $155,000 listed value was unsupported by any evidence. The $35,000 value is a reasonable price, but it includes a premium for financing on contract. This premium is not a reflection of the value of the property, but rather of the value of the financing.

The Court concludes the value of the debt to be $36,000. Debtor and Mrs. Wilson testified that there were many IOU's, one interest bearing note, and many uncompensated weekends of working at Debtor's bar. Debtor testified to granting Mrs. Wilson a total of $4,650 in IOU's. He also testified to giving Mrs. Wilson an interest bearing note of $15,000 at six per cent interest on November 5th, 1997. At the date of transfer, that note had a face value of $15,000, and $3,820 in unpaid interest, for a total of $23,470. Mrs. Wilson testified that she thought the total debt was at or around $36,000. This leaves a $12,530 difference. Mrs. Wilson only testified that she worked many weekends for about 5 years. The difference of $12,530 is in the range of salary for a person who works 30 weekends a year, for five years, at ten hours a weekend, with a pay rate of $7-10 per hour. This creates a range of $10,500 to $15,000. The Court concludes that $12,350 is in the middle of the range a represents a reasonable value of Mrs. Wilson's uncompensated work.

3

**EVIDENTIARY ISSUES**

Debtor attempted to introduce as evidence a set of papers that had writings that described certain loan transactions arising from the Agreement. Trustee objected to admission of the papers as hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The set of papers were offered into evidence as substantive proof of the loans. This is hearsay. The Court must, therefore, determine whether any of the numerous exceptions to the rule make them admissible.

Debtor asserts the recorded recollection exception to the hearsay rule is applicable. A "recorded recollection" is a record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. Fed. R. Evid. 803(5). If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party. Fed. R. Evid. 803(5). This set of papers meets this exception. Debtor stated the records were created several years ago and that he had insufficient memory to recollect specific details concerning the transactions. The set of papers were allowed to be read into the record, but the documents themselves were not admitted. The Court is satisfied that this comports with the Rules of Evidence and fairness to the parties.

Debtor also attempted to introduce into evidence a compilation of financial data concerning the debt arising from the Agreement. A data compilation is not admissible unless authenticated or identified. Fed. R. Evid. 901(b)(8). A compilation is inadmissible so long as the creator of the document is not brought as a witness to verify its authenticity. See Mayer v. Angelica, 790 F.2d 1315, 1338-1339 (7th Cir. 1986). Debtor did not call the accountant who compiled the financial information as a witness. The compilation is inadmissible.

**CONCLUSIONS OF LAW**

The bankruptcy code allows the trustee to avoid a transfer voidable under applicable state law. Under §

4

544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim." This statute grants the trustee the same powers as an unsecured creditor under state law. In re Rolain, 823 F.2d 198, 199 (8th Cir. 1987). The trustee, to avoid a transfer, must identify an existing unsecured creditor with a valid right to avoid a transfer. Stalnaker v. DCL, Ltd., 376 F.3d 819, 821 (8th Cir. 2004). Trustee's recovery is not limited to the value of the claim of the identified unsecured creditor. Id.

## IOWA CODE CHAPTER 684

Under § 544(b)(1), the applicable state law is Iowa Code Chapter 684, which covers fraudulent transfers. Under Chapter 684, the burden of proof is on the bankruptcy trustee to prove the allegations of fraud when seeking to set aside conveyances from husband to wife. Johnson v. Warrington, 240 N.W. 668, 670 (Iowa 1932). The party asserting fraud must prove its existence by clear, satisfactory, and convincing evidence. Ralfs v. Mowry, 586 N.W.2d 369, 373 (Iowa 1998).

The applicable section is Iowa Code sec. 684.4(1), titled "Transfers Fraudulent to Present and Future Creditors," which states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following circumstances:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, if either of the following applies:
>
>> (1) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

> (2) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The Iowa Code supplies eleven factors under sec. 684.4(2) to help courts determine "actual intent" under sec. 684.4(1). The Code states:

> 2.  In determining actual intent... consideration may be given, among other factors, to any or all of the following:
>
> a. Whether the transfer or obligation was to an insider.
>
> b. Whether the debtor retained possession or control of the property transferred after the transfer.
>
> c. Whether the transfer or obligation was disclosed or concealed.
>
> d. Whether, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> e. Whether the transfer was of substantially all the debtor's assets.
>
> f. Whether the debtor absconded.
>
> g. Whether the debtor removed or concealed assets.
>
> h. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> i. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

        j. Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

        k. Whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Iowa Code § 684.4(2).

    Iowa courts search for "badges of fraud" to determine if there was actual intent. The factors in sec. 684.4(2) reflect the badges of fraud established by prior case law. A court considering a claim of fraudulent conveyance looks for badges or indicia of fraud such as inadequacy of consideration, the transferor's insolvency, pendency or threat of third-party creditor litigation, secrecy or concealment, departure from usual business methods, reservation of benefits to the transferor, and the debtor's retention of the property. Ralfs, 586 N.W.2d at 373; Hartford-Carlisle Sav. Bank v. Shivers, 552 N.W.2d 909 (Iowa App. 1996); Textron Financial Corp. v. Kruger, 545 N.W.2d 880 (Iowa App. 1996); Benson v. Richardson, 537 N.W.2d 748 (Iowa 1995).

    Ordinarily, proof of more than one of the badges of fraud is necessary to warrant an inference of fraud in a transaction. Ralfs, 586 N.W.2d at 373. The amount of consideration has greater impact in the resolution of the issue of whether the conveyance is fraudulent when viewed with other badges of fraud. Textron Financial Corp., 545 N.W.2d at 884. Also, the convergence of several badges or indices may support an inference of fraud, which grows in strength as the badges increase in number. Id. at 883.

### ANALYSIS

    Under § 544(b), the bankruptcy trustee may avoid a transfer by stepping into the shoes of an unsecured creditor. Debtor's Schedule F lists 27 unsecured creditors with total debt of $48,221.73. Eight creditors filed proofs of claims after receiving notice that assets exist for distribution. Thus, the record in the bankruptcy case is sufficient to prove the existence of a creditor holding an unsecured claim under § 544(b).

Iowa Code sec. 684.4(2) provides the factors, or badges, which the Court must consider to find actual fraud. One factor that is affirmatively established in this case is that the transfer or obligation was to an insider. As Debtor's wife, Mrs. Wilson is an insider under Iowa Code sec. 684.1(7). The record does not support a finding that Debtor retained possession or control of the property transferred after the transfer, that the Transfer was concealed, or that a threat of suit existed before the transfer was made. The record also does not support a finding that the transfer involved substantially all the Debtor's assets, that Debtor absconded or fled, or that either Debtor or Mrs. Wilson removed or concealed any assets. The record does not support a conclusion that a transfer occurred shortly before or shortly after a substantial debt was incurred. There were no liens on the property, so there could be no transfers with a lienor.

The remaining factors require more thorough analysis. The first issue is whether the debtor was insolvent when the transfer was made. The second issue is whether there was consideration for the transfer. The third issue is whether the consideration exchanged was for reasonably equivalent value.

Under Iowa Code sec. 684.4(2)(i), a factor in showing "actual intent" is whether debtor was insolvent or became insolvent shortly after the transfer. Under Iowa Code sec. 684.2(1), a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation. The record does not support a finding by clear, satisfactory, and convincing evidence that Debtor was insolvent or became insolvent shortly after the transfer.

Under Iowa Code sec. 684.4(2)(h), a factor in showing "actual intent" is an absence of consideration for the transfer. The deed stated both "for consideration of $1 and other valuable consideration" and "this is a deed between husband and wife without actual consideration." Under Iowa law, in so far as a deed is ambiguous, parol evidence of the surrounding circumstances may be considered to ascertain the intent of the parties. <u>Maxwell v. McCall</u>, 124 N.W. 760, 761 (Iowa 1910). The surrounding circumstances show the parties intended to use the Transfer as repayment of antecedent debt. While the wording within the deed contradicts itself, the intent is clear. Consideration for the Transfer was

retirement of antecedent debt existing between Debtor and Mrs. Wilson.

Under Iowa Code sec. 684.4(2)(h), the consideration for the transfer must be reasonably equivalent to the value of the asset transferred.  In the Court's finding of fact, the antecedent debt between the parties is valued at $36,000.  The Court finds the value of the property to be $29,000.  There is no question as to the reasonable equivalence.  Even if the valuation of the building was the amount of the offer of $35,000, the exchange of antecedent debt of $36,000 remains reasonably equivalent.

## CONCLUSION

Trustee's Complaint to Avoid Transfer must be denied. The Transfer between Debtor and Mrs. Wilson is not voidable under § 544.  One badge of fraud exists in that the parties are husband and wife.  Trustee has failed, however, to meet the required elements of Iowa Code sec. 684.4 with clear, satisfactory, and convincing evidence.

**WHEREFORE**, Trustee's Complaint to Avoid Transfer is DENIED.

**FURTHER**, the transfer of real estate by Quit Claim Deed by Debtor Michael Wilson to Robin Wilson is not voidable under 11 U.S.C. § 544 and Iowa Code sec. 684.4.

**FURTHER**, judgment shall enter accordingly.

**DATED AND ENTERED** November 12, 2004

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE